Good morning, Your Honors. May it please the Court. Your Honor, the first issue I'd like to address is the substantial delay in prosecuting the appeal. My predecessor, with all due respect, before the case was assigned to me, the matter was lingering for approximately two and a half years. I believe, I would submit that's a substantial delay, and if we look at the factors in order to determine if it's a substantial delay, I think . . . JUSTICE KENNEDY Do we have to decide, in order to accept this argument, do we have to decide that your appeal otherwise is meritorious in some fashion? YUAN I was going to address that as well. Would the Court prefer that I address the merits of the appeal? Rather than . . . Okay. Why don't we look at the first issue, which I think is whether or not the trial court or the district court erred in denying the defense requested instruction on the defense of . . . What was that? Duress, actually. When the defense was requesting the instruction, there was a colloquy between the court and the defense. The district court judge, she agreed with the defendant that Mr. Yuan's fear was well-grounded. The court may recall he was on the ship. They left China. I don't recall the province, but they left China. They ended up in the area of South Korea. Mr. Yuan, at that point in time, based upon his testimony anyway, indicated that he at first . . . first came to his attention that there was 50 stowaways in the ship and that they intended on illegally bringing the stowaways into the United States. Upon learning of that, he immediately submitted a letter of resignation to Captain Yi and told Captain Yi or Lee that he no longer wanted to continue participating. What was the basis for the letter of resignation? Was it fear? I believe it was fear and both the fact that he did not approve of the practices that were being . . . Where's that letter in the record? It is not part of the record, Your Honor. There was his testimony about the letter, but to my knowledge, it was never introduced as an exhibit or I would have included it within the excerpts of the record. But there was a testimony that the letter was accepted. The . . . I believe it was Captain Yi actually testified himself, and I don't recall any testimony that such a letter was not submitted or anything to counter Mr. Yuan's testimony that he did submit that letter. It was a letter of resignation, right? Yes, Your Honor. Did it recite reasons within it? I don't know the exact contents of the letter. It indicated that he approached Captain Yi and told Captain that he wished to resign his position as Second Lieutenant. I thought the letter spoke of the unseaworthiness of the vessel. I don't recall that, Your Honor. But there was testimony that the reason that he submitted the letter when he arrived in South Korea was due to the fact that he did not approve the practice of the captain of the ship transporting 50 illegal stowaways into the United States. He objected to that. He protested it. Captain said, We cannot return to China. If we return to China, you're dead. You and I, actually. Was that testimony at trial that he informed the captain that he objected to the smuggling? Was that the testimony? I believe that was the defendant's testimony at trial, yes, Your Honor. And so the jury had an opportunity to decide whether or not it believed that testimony. The jury did have an opportunity to decide if it believed that testimony, but the jury was not guided with an instruction on duress. What value did the testimony have without a legal principle advising the jury that it is a defense to the crimes in which the conspiracy crime that the defendant is charged? But didn't the court make the determination that duress was not indicated by the facts because Mr. Yan did not take advantage of opportunities to escape? Well, let's talk about the reasonableness of that finding by the court, with the reasonable opportunity to escape. He's on a ship. The ship is at sea. He's in China. They land in Korea. There was some testimony that the captain refused to give him the papers. So if he were – I don't quite know the immigration laws of Korea, but it's my understanding that he needed some type of paperwork or some kind of documentation when he was in South Korea in order to get from South Korea back to China. The captain had those – Captain Ji had those documents and refused to give them to Mr. Yuan. He couldn't have jumped ship in Korea and contacted Korean authorities? Could he? I mean, there were – it was as – I assume it was as illegal to smuggle people into Korea as it is to smuggle people here. I assume the court's correct. And wasn't there also some evidence that the jury heard that while the vessel was in Korea, the captain left the ship and your client was in command and had access to radios where he could have called for help? That's one of the issues. And one of the – I think all – eventually, ultimately, all of this should have gone to the jury because there were questions about language barriers, whether or not he was – Was there testimony to that effect? Yes. I don't believe, though, that there was – that would have been significant enough to justify failing the defense Counsel, how about when the authorities came on board in the United States and the crew was sequestered? There was absolutely no way that Captain Ji or the – Mr. Ji or anyone else could have harmed your client at that point. And he was asked several times whether he spoke English and he had an opportunity to talk with the customs officials. Now, at that point, why didn't he say, I'm being held against my will, these people are smugglers, let me help you? I believe that was a question that probably should have been addressed to Mr. Yon actually during cross-examination and determining the merits or whether or not the jury should have found the defense warranted. That's the state of the record, and that's what the judge relied upon in saying there was no justification for duress instruction because she looked at that and said if he really were afraid, that that was his opportunity to make an escape. Yes. But I believe that the evidence still warranted the instruction. Ultimately, the question shouldn't have been cut from the jury. The jury should have had the opportunity to make the determination on that defense. But isn't it an abuse of discretion for the court to decide that there were not sufficient facts to warrant the giving of that instruction in light of all the circumstances we've discussed here? Your Honor, based upon – I'm wondering if the court would be appropriately applying the abuse of discretion standard of review because in addition to the argument that it was an error to deny the defense the instruction, the brief also addresses whether or not the denial of the instruction denied defendant the Fifth Amendment right to present at the defense under Chambers v. Mississippi. So if there's any error, I don't think the court should be wondering whether or not the district court abused its discretion, but I think the prosecution or the AUSA in this particular case would have the burden imposed upon it to establish that the error was harmless beyond a real doubt. Well, first we have to find error. Yes, ma'am. Well, I believe that the issue should have been submitted to the jury because the jury should have been the one to be entitled to have been the fact finder. There was evidence of immediate threat of death or great bodily injury. There was at least a testimony of Mr. Yuan that the Captain Gee said that he would – if he returned to China, he would be killed. The stowaways – Immediate? I believe that would be because if he were to continue to demand a return to China, that would be immediately subjecting him to death or serious great bodily injury. In addition, he did tell Mr. Yuan that if he continued to carry on as he was, the stowaways would throw him overboard. So that also put the omnipresence of the stowaways upon Mr. Yuan during the entire time that he was on that ship, and that would instill fear upon him that the stowaways would instill such harm upon him. So the stowaways were immediately there. The AUSA, in their brief, they cite – what is it? They cited the court's – USB Shyrock. It's at page 27 of their brief. But in that case, it said that there was a prospect of battery or some type of injury in 30 days. That's not the case here. They're not going to say if you continue to protest your presence on this ship, you're going to get injured in a week or two weeks. In this particular case, the stowaways were immediately present. They were continuously present, and they were not separated from the appellant. So I believe that his fear of their continued presence, in addition to Captain Gene, together would have established or instilled reasonable fear upon him of death or great bodily injury. Again, I think the issue was significant enough so that the jury – it should have gone to the jury. If the jury disagreed with the defense and didn't think that the instruction was warranted, then so be it. But the district court should have at least submitted the issue to the jury to have allowed the jurors to be the ones to be the decision maker in this case rather than the district court. Counsel, what about the testimony from one of the stowaways who said that your client instructed the stowaways to disavow any knowledge of them should they be caught, and that a second stowaway testified that your client boasted to being the heart of the center, which meant he had authority on board the ship, and also the captain testified that it was your client who came up with the idea of hiding the aliens in the forward area. How does that testimony square with your contention that a duress instruction was warranted? It doesn't square with Mr. Yuan's testimony. Mr. Yuan denied that when he took the stand, and I think it should have been for the jury and not for the court or this court to make the decision whether or not who was more credible than the other. The jury saw the eyes of the people that testified. The jurors were never given an opportunity to consider the defense of duress because they were never so instructed that if he was acting under duress, that would have constituted a defense to the crimes charged. What quantity or quality of evidence does it take in order to merit an instruction? I believe that there should have been at least sufficient evidence so that a reasonable fact finder, objectively speaking, could have found that the instruction was warranted. And there was a testimony of Mr. Yuan. If the jury were to have believed the testimony of Mr. Yuan, I believe that would have entitled him to an instruction on the defense of necessity or the defense of duress. Excuse me. And the jury would have been the one to have decided at that point. I think the threshold determination was met or the threshold showing was met by the defense so as to have at least warranted the defense to have been entitled to such an instruction so that he could have presented his theory of the defense and further argued to the jury, this is the law of the Ninth Circuit, ladies and gentlemen. This is the law. This is what it says. And this is the way Mr. Yuan acted. You heard the testimony of Mr. Yuan. Mr. Yuan was acting under duress. This is a defense to the charges and it would have entitled him to an acquittal or a verdict of not guilty. What case authority are you relying upon to support your position that when there is conflicting testimony regarding the duress that the instruction is nevertheless warranted? What case are you relying on? I have no case at hand. I could submit additional authority as to the threshold determination that needs to be met. I was just wondering. No, I don't have any cases at hand. Your Honor, in addition to the – I did want to talk briefly. I did want to ask – the calendar indicates I have 20 minutes. Do I have 20 minutes or 15 minutes? You have nine minutes left. Nine minutes left. I want at least two minutes at the very end, if I may. With regard to the withdrawal from the conspiracy, I believe that the district court had an obligation, as it does to instruct the jurors on the law in this particular case, that there was significant evidence that when Mr. Yuan learned that the stowaways were in that – whatever that thing was called – in the ship in South Korea, and he then approached Mr. Ji, submitted a letter of resignation to Mr. Ji, that I believe that would have entitled the defense to a jury instruction on the defense. Now, that was not requested. So you're saying the court should have sua sponte instructed on withdrawal? Yes, ma'am. I believe it was plain error. I'll submit that it's plain error. It's not Chapman. It's not deferential standard of review. It's plain error. If a jury instruction is not proper, do we have a plain error or do we have a waiver issue? I don't believe the issue would have been necessarily waived because I think the district court essentially had a to properly assure that the jurors are adequately instructed on the law. Would you agree that withdrawal is an affirmative defense? I would. And so now, what's your best case authority for the proposition that a court has an obligation to sua sponte instruct on an affirmative defense? None other than those that are cited in the brief. But I do believe that the instruction was warranted and it was plain error not to have given such an instruction because there was evidence to show that at the time, and maybe it's better raised in a 2255, if Mr. Yuan were to wish to proceed that way because there might be matter outside of the record, but I do think that the record would have supported the giving of such an instruction because when he learned that there were illegal stowaways, he attempted to withdraw from the conspiracy. He sought to resign. He wanted off the ship. He wanted literally, quite literally off the ship. He wanted out of the scene. Now, the AUSA in their brief, they argue that some of the overt acts that are committed. However, based upon the testimony of Mr. Yuan, he was not a knowing participant in the conspiracy from the time, from the trip to China to the trip to South Korea. And if he was not a knowing voluntary participant and there was no agreement between the parties, there was no conspiracy at that point in time. When did the conspiracy develop? When did it arise? And that goes to the sufficiency of the evidence argument. When did all that happen? That's all matters that I think would have entitled the defense, Mr. Yuan, to an instruction on the defense of withdrawal from the conspiracy. He did everything he could at that time to withdraw. He was threatened with death. He was threatened with great bodily injury. And, again, that goes to the duress instruction. Now, I can't communicate with Mr. Yuan. I have no idea where he is. He's somewhere in the reaches of China. And I can't, you know, and I think that prejudices him. Maybe he could have gone, Mr. Crawford, you could have tugged on my shirt this morning out in the audience and said, how about this? You know, I don't have that benefit with me. So I'm doing the best I can, not being able to know where my client is, not being able to communicate with him, not being able to notify him of any rulings by the court or decisions. So I believe, based upon that, he's been denied due process because of the substantial delay. And proceeding with the appeal, the appeal is meritorious. It may have even been better if I had an ability to communicate with him. And based upon that, I believe he's denied due process. If the case were to be reversed and sent back, what are we going to do? He's not going to be able to be present at his trial. Half the other witnesses have all been deported and sent back to China. I can't contact them. Under Crawford, I don't know if it would be appropriate to use the former testimony. I don't know. I haven't even gone that far yet. But based upon that, I think he was denied due process. I think if he ever wanted to come back to the United States, his ability to come back would be significantly impaired. So I believe his conviction should be reversed and vacated. Thank you. Thank you, counsel. You may reserve the balance of your time for rebuttal. Thank you. Good morning, Your Honors. My name is Andy Cowan. I'm representing the government in this appeal. And for the Court's information, I was one of the co-counsel at the trial in this matter. Why don't I begin by addressing the two issues that the Court seemed to have the most interest in, the duress issue and the issue of defendant's withdrawal from the conspiracy. It's a question of abuse of discretion as to the failure to give the duress instruction. And I think as the Court picked up on, is the defendant's burden to prove by preponderance of the evidence that each of the three elements have been met to establish a duress instruction. Does he have to prove it to the jury or to the Court? Well, you have to prove it to the Court. There would have to be evidence adduced to the Court's satisfaction that there was, that each of these elements had been satisfied. It's obviously the Court that makes the decision on whether to grant the duress instruction. Those three elements are whether the defendant committed the. Does he have any additional thing that he has to prove to the jury beyond what he has to prove to the judge? If the judge decides to give the instruction. If the Court decides to give the instruction, then you would. I'm not sure I understand the question. What I'm implied in your answer, if I understood it correctly, and I might not, is that he has to prove his defense to the judge 100 percent before he's able to submit it to the jury and try to convince them 100 percent. And that's, I wonder, the test for giving an instruction. It's not an issue of 100 percent. I think it's just by preponderance of the evidence, essentially that if enough evidence is introduced to allow a jury, a reasonable jury, to find each of those elements, then that would suffice. Okay. Who has the ultimate burden? Well, it's ultimately the government's burden to prove the defendant is guilty beyond a reasonable doubt. But in terms of allowing the defense to be raised and instruction to be given, it is the defendant has to establish, you know, or point to enough facts in the record that would meet the threshold of allowing that defense to go forward. And you say that's a preponderance burden. It's my understanding it's a preponderance burden, yes, Your Honor. Now, as I said, the three issues are whether the defendant was under constant, immediate threat of serious bodily harm or injury, whether the defendant had the chance to contact authorities or to escape, and whether he had a well-grounded fear that the threat would be carried out. I believe that based on the defendant's own testimony and viewing it in the lightest reasonable term, he did say that he had a well-grounded fear. So I want to address that issue. The two questions, whether he was under constant, immediate threat of death or bodily injury, whether he had an opportunity to escape. And the critical fact here, Your Honor, is that the defendant, by his own admissions, was in situations where he did have an opportunity to escape and he was not under immediate threat. That specifically occurred when the defendant was in Korea. The defendant admitted that there came a time, admitted on cross-examination, that there came a time when Captain Lee and the smuggler, Liu Ji, left the ship. He admitted that he had access to the bridge and to the radio equipment. He admitted that he never attempted to contact the Korean police. He admitted that when he had a meeting with the ship's representative that had come to the ship to see what was going on vis-à-vis the breakdown, he never mentioned to the ship's representative that there were stowaways on board. And he also admitted that he never told United States customs inspectors that there were aides on the ship. And given that his supposed defense, and, in fact, this is what was argued to the jury, even in the absence of a defense instruction, of a duress instruction, was that he was afraid for his life that, metaphorically, he had a gun to his head and this is why he was doing it, that just doesn't square with his admissions. A person facing that kind of duress quite naturally would presumably use the radio at the first opportunity, contact authorities at the first opportunity. He didn't do that. Or at least maybe has a duty to if he wants the defense to work. Exactly, Your Honor. And, again, for many of the same facts, the same factual circumstances, when he was not under an immediate threat, he did have an opportunity to escape the threatened harm essentially by going to the authorities. So based on that record, it simply was not error on the part of the court to refuse this given a duress instruction. As to failure to sua sponte give an instruction as to withdrawal of the conspiracy, quite honestly, I have a little trouble understanding the defendant's argument here. The defendant is arguing that his defense should be that he withdrew from the conspiracy, which seems to suggest that he was a part of the conspiracy in the first place. Yet he denies being a part of the conspiracy. The defendant's position at trial was that he was never a member of this conspiracy, that he only found out about the aliens on board once he got on the ship and left China, and that he was under duress the entire time. That's his own testimony. That was contradicted by various witnesses that the government introduced. But in any event, even if he admitted to being a member of the conspiracy and attempted to withdraw in Korea, well, that's too late, because by that time there had been numerous overt acts that had been taken in furtherance of the conspiracy. There had been beatings in China. The aliens had been loaded onto the ship. The ship had left China. So once the overt acts have occurred, the crime of conspiracy is complete. And I think the Court also picked up on the nature of the supposed withdrawal, which occurred in the form of a resignation letter. The Court is correct in that the resignation letter did not speak of aliens, did not speak of stowaways. But when we say the letter does not, you mean the testimony about the letter? The testimony. The letter itself was in Chinese, Your Honor. And the government. It was still available at trial. Is that right? It was available at trial. The government took the position that it was hearsay and admissible. However, testimony was admitted concerning the effect of the letter. So there was some testimony that came in on the letter on that respect. But the letter, and I believe that this is at government's excerpt at 315, it's clear that the letter did refer to the seaworthiness of the vessel and had said nothing about any illegal conduct going on. Did the Court rule on the hearsay objection that was made by the government? I don't think it's in the government's excerpts. I believe that there would have been a ruling on that because the defense, Mr. Boren, had intended to introduce the letter. I'm assuming, then, the Court sustained the objection? Yes, Your Honor. I don't have a cite for that. Was an argument made that it was an admission by the defendant? Well, the government did not intend to introduce it in its case in chief. So we would not have taken the position that it was a party admission. And on the other part, on the other. Well, I don't. It's an exception to the hearsay rule. I don't believe that the, Your Honor, I don't believe the defendant can introduce his own hearsay as a party admission. It has to be the admission by the opposing party. It might be a verbal act. But, you know, that would be the argument, I suppose, of whether it's being introduced for the truth or just the fact that it was done. But anyway, I guess that's probably beside the point. Wouldn't it have been a prior consistent statement that may have been kept out that way if it had been offered by the defendant? He could have alleged that it was offered in order to show, not to show recent fabrication. Well, that may be, Your Honor. For whatever reason, I don't believe that it actually was ever introduced, although there was certainly testimony about the content. You didn't want it in anyway. It ultimately didn't matter in the end, Your Honor. But that's typical, part of the ebb and flow of trial. As far as the remaining issues, I don't know if the Court would prefer that I address either sufficiency of the evidence or the motion for mistrial that was premised on prosecutorial misconduct or the appellate delay. If the Court doesn't have any preference, I suppose I'll take up the denial of the motion for mistrial. The defendant's position is that a single passing reference that the prosecution made to his custodial status, quickly followed by two curative instructions from the Court, curative instructions that have been approved by this Court, requires a mistrial. The defendant cites no case that holds this. And, in fact, this Court has held that even more egregious references to a defendant's custodial status can be cured. In order for a government, and if the Court will recall, what had happened in this case was that the defendant had attempted to influence the testimony of one of the key government witnesses, Captain Lee. They had been placed in a holding cell together, at which point the defendant attempted to get Captain Lee to change his testimony, to say that you don't remember whether I was at this meeting and so forth. In eliciting this testimony from Captain Lee, the government inadvertently elicited the fact that this took place in the holding cell while the defendants were in custody. The Court promptly gave curative instructions modeled on the instructions approved by this Court in Halliburton, and there were no further references to the defendant's custodial status. For there to be mistrial, for mistrial to be required, such misconduct would have to be so severe as it actually denies the defendant the right to a fair trial, in other words, a finding of prejudice. Here, it just simply did not rise to that level. It was made in passing. It was not even as inflammatory as the errors at issue in Milner or Halliburton. The jury already knew that Captain Lee was in testimony. This had come out during his testimony the previous day, and this was not something that the government argued in closing argument or anything like that. So although the government did make a mistake in inadvertently eliciting this testimony, there was no prejudice, and certainly the defendant never conducted any voir dire on the jury to see if they had been influenced. I wonder about the delay in the appeal. As to the delay in the appeal, Your Honor, I think that ultimately there are two points on that. The ultimate issue is really whether the defendant was prejudiced by the appeal. And in a case such as this, where it is apparent that the appeal does lack merit, that there are no really viable issues in the final analysis, that the appellate delay just doesn't matter. The factors that this Court specifically looks at are the length of delay, the reasons for the delay, whether the defendant has asserted his right to appeal, and whether there has been prejudice. And the prejudice prong includes looking at factors such as whether there was oppressive incarceration, whether there was anxiety or concern, undue anxiety, concern on the part of the defendant, or whether his grounds for appeal, viability of defense would be impaired if there were a retrial. Obviously, Your Honors, this is a case where the defendant finished serving his sentence in, I think it was in May of 2002. He was deported from this country in June of 2002. There's nothing in the record that suggests that the defendant even knows that we're here today, much less that he exhibited any sort of anxiety or concern over the pendency of the appeal. Moreover, the defendant was properly found guilty. Any incarceration that he experienced was certainly not oppressive or undue. And none of these issues, the government can see no reason why this sort of delay would be in any way prejudicial if there were some sort of a retrial in this case. And moreover, just going back to the defendant's asserting his right to appeal. Well, if this appeal would have been heard while he was still in BOP custody, and he'd won the appeal and gotten a new trial, he would be a veiled trial. Counsel says if that's the result here today, there's no way he can bring him back. Well, two responses to that, Your Honor. Of course, that assumes that there would be a retrial, which assumes that there are meritorious issues in this appeal, and the government obviously takes the position that there aren't. Secondly, although counsel has asserted that the defendant would not come back for a retrial, that's not in the record. We don't know. We don't know what efforts have been made to contact him. And, Your Honors, if he's not sufficiently interested in this case to come back for a retrial, I think that also goes to the extent to which he's asserted his right to appeal. So there doesn't appear to be any prejudice whatsoever from the delay. And one thing to bear in mind is that once this trial was completed, there were some material witnesses. They were not kept in the United States following the convictions here. So the length of the delay doesn't really have anything to do with whether certain witnesses are there or not. That would have been the case even had this been promptly resolved. In conclusion, Your Honor, this really was not a close case. There was more than ample evidence to actually, I guess, does the Court wish to hear any argument on the issue of sufficiency of evidence? That's the one that I haven't touched on yet. I do not need anything. Very well, Your Honor. As I said, this is not a close case. There was more than adequate evidence to support the conviction. The district court did not abuse its discretion in denying the motion for a mistrial. There was no error committed in giving the jury instructions, and there was no prejudice that resulted from the appellate delay. For these reasons, defendants' convictions should be upheld. Thank you. Thank you, counsel. Rebuttal? Your Honor, so with regard to the defendant's assertion of his right to appeal, over the two-and-a-half years from the time the notice of appeal was filed until the time that I was appointed, an abandonment was not filed. A dismissal was not filed. Presumably, the preceding attorney filed the notice of appeal to direction of his client. It was filed.  And nobody had made any attempt to dismiss it. There was no attempt whatsoever to terminate the appeal. And subsequently, I was appointed, and I then proceeded on filing the opening brief. But there was that two-and-a-half-year delay from the time that Mr. Yon was sentenced until the time that I was appointed. And that two-and-a-half-year delay ---- We would like to express our appreciation for your taking the appointment on this case. I'm happy to. I'm happy to. Thank you, Your Honor. But that two-and-a-half-year delay, he already served his sentence. He was deported. I wouldn't even know where to begin to find him. I wouldn't even know who to retain or who to ---- I would have no idea. The government indicates he may not want to be here. He may not want to come back for a retrial. The government may not let him back into the country. We still have homeland security. We still have borders. Mr. Yon just can't get on a plane and fly into LAX next week. They would have guards all over him. They'd hook him up. They'd put him into someplace, probably in San Pedro, and then deport him. I don't know what the procedures are because I don't do that stuff. But it's not like you can just get on a plane and hop over to LA next week. It's not that easy. If we ever were to find him, then who knows what the AUSA would need to do to get him permission to come back into this country in light of the ---- Well, I suppose if it was a prejudice of a retrial, that could be raised at retrial. But with regard to ---- I don't believe that there's any authority. The government says that, going back to the merits of the appeal, just to go wide, again, the prejudice that Mr. Yon suffered. With regard to the instruction or duress that was requested by the defense, I don't see any authority whatsoever that says that the defendant would have to prove his defense to a judge to satisfaction by a preponderance of the evidence. If the defendant were able to, to the satisfaction of a judge, prove his defense by preponderance of the evidence, the defendant would have been entitled to granting of a Rule 29 motion and the issue shouldn't have gone to the jury. The judge should have just dismissed the case right there based upon a finding of a preponderance of the evidence that the defendant showed his defense. So that should ---- that is too high of a burden. There is no authority that says that burden needs to be that high upon a defendant. If there is no authority, then what must a defendant show in order to be entitled to the giving of an instruction? I think there has to be a threshold showing that the elements are there to a level, but 51 percent, I don't see that. I think it's down around maybe 10 to 12 percent if we were doing it in a numerical basis. But there has to be some showing, some threshold showing that each of the elements are there. I disagree with that. I think there has to be evidence in the record from which a jury could believe. Yes. That would be a good approach as well. That's more than just some evidence. It is, but it's also not as much as 51 percent. It's not as much as a preponderance of the evidence. And believe that there was some evidence. There was evidence that he was under great fear of great bodily injury. There was evidence that he was in sustained fear. The judge, the district court said that he was in sustained fear. There was evidence based upon his testimony. But there was also evidence that he was dealing with approximately 50 stowaways. There was evidence that they were hostile, that there was previous hostilities. There was evidence for Mr. G threatening death. And it's not as though these people made these threats in the abstract and he's 50 miles away and this could happen in 30. They're all on a remote ship. I mean, there's a little privacy on these ships. There's little you know, you're constantly. How do you address the point made by your opponent that a withdrawal instruction really would have been inconsistent with your defense, which is that he was never part of the country in the first place. That's one of the issues is when would the conspiracy had started. It's their theory that the talk to you fast. It's their theory that the conspiracy started at the minute that they left the province and left the ship. And it's their argument that at that point in time, Mr. Yan began to engage in an overt acts had been completed. So therefore, by the time he got to South Korea, it was too late to attempt to withdraw from the conspiracy. The theory was the conspiracy began with the first meeting. They say your client attended. Yes. And that the overt act was probably the lodging of the of the stowaways on board. But Mr. Yan's testimony indicates that he was not aware of the fact that the stowaways were on board until the time that he arrived in South Korea. When he was in South Korea, he made an attempt based upon that letter that was in Chinese to withdraw from the conspiracy. It also goes to the sufficiency of the evidence of the conspiracy. They kind of overlap in a way. Now, I suppose, I mean, what it may be that your argument may. I don't know what was argued at trial, but I suppose the argument can be that. Look, when he first learned of the fact that there were stowaways on board, he tried to resign. He never joined this conspiracy. Well, one of the questions that came to me when they were arguing that if they is their theory that the conspiracy started. And it began in China when they were loading the stowaways, as the court had indicated. My question at that point in time is if he sought to withdraw from the conspiracy by the time he was in Korea. And then because of the duress and the threats to his life. What happened to the U.S. withdrawal assumes he was part of it at one time. But if you if their theory is that he was part of it and he sought to which assumed their theory. It started when they were in the province of China and he gets over to South Korea. And then at that point, he seeks to withdraw based upon the letter of your argument. And you're entitled to present inconsistent defense. That's true, too. Yes. The drug defendant says I didn't do it. But if I did or one five hundred grams. Yes, Your Honor. But my my thinking is this is that the conspiracy had already begun and the crime had already been committed. It was also U.S. territory at the time that the crime had been committed. If he sought to withdraw from the conspiracy and he was still outside of the United States territory, the crime had been committed. And what did the crime restart again in the withdrawal? And when did the crime start and when did it get into U.S. jurisdiction? It gets even more complicated than I can think of. And I thank you again for accepting the appointment of this case. The case just argued is submitted for decision by the court. The next case, Tapia versus Canberra, has been removed from the calendar. And the final case for argument today is United States versus Misano.
judges: Canby, Hansen, Rawlinson